Drake, Ch. J.,
delivered the opinion of the court:
On the 27th of March, 1865, a contract in writing was entered into between the claimant and Colonel J. A. Potter, quartermaster United States Army, on the authority and by direction of the Secretary of War, whereby the claimant agreed to trans *379 port all tbe military stores and supplies for which, the Quartermaster’s Department might require-transportation, by contract, on the route designated in said contract, during the year 1865, at specified rates, provided the weight of such military stores and supplies should not exceed in the aggregate 15,000,000 pounds.
The points at which, by said contract, the claimant was bound to receive such stores and supplies for transportation, were Forts Leavenworth and Riley, in the State of Kansas, and the town of Kansas, in the State of Missouri; and among the points of delivery named in the contract was Fort Union, in the Territory of New Mexico.
Under the said contract the total amount of stores and supplies furnished to the claimant by the Quartermaster’s Department for transportation within the year 1865 was 14,202,811 pounds, leaving 797,189 pounds of the 15,000,000 not furnished by that Department to the claimant for transportation.
The claimant sues for damages sustained by him by reason of the failure of the Quartermaster’s Department to furnish Mm the 797,189 pounds for transportation, and he bases Ms right of action on the following facts:
The commissary department at Fort Leavenworth, being ordered, in September, 1865, to supply 18,000 bushels of corn at Fort Union, New Mexico, contracted with A. N. Fuller and John Tiernan for the delivery of the corn there, and the obligations of those parties in the premises were expressed in the contract in the following terms :
“The parties of the second part agree to deliver, at Fort Union, in the Territory of New Mexico, 18,000 bushels of shelled corn of the best quality, well sacked in new gunny-sacks, securely sewed with linen twine. Said corn must be free from dirt, cobs, or other foreign matter, and must be either yellow or white, but not mixed in the sacks, to be delivered to the officer of the Subsistence Department at Fort Union, New Mexico, on or before the 20th day of December, 1865. The said parties of the second part agree that the said corn shall be subject to the inspection, acceptance, or rejection of the officer receiving same, and that, if default shall be made by the said parties of the second part, or either of them, in the time of delivery, or any of the terms of this contract, the party of the first part, or any person acting for him on behalf of the United States, shall have *380 power to purchase the com in open market; and the said parties of the second part and their sureties shall be charged with, the difference between the cost thereof and the price hereinafter stipulated to be paid to the said parties of the second part. The parties of the second part further agree that, if default shall be made by them in any of the terms of this contract, that any sum or sums of money due or to become due them by the United States of America shall be held and applied to satisfy any damage that may accrue to the United States by reason of such default.”
On the part of the United States, it was agreed to pay Fuller & Tiermau u $8.54 for each and every bushel of corn delivered and accepted in accordance with the terms of said contract, payment to be made on vouchers issued and certified by the officer receiving said corn.”
At the time this contract was entered into between the Commissary Department and Fuller & Tiernan, the latter were engaged in supplying corn to the Quartermaster’s Department, at Fort Leavenworth, and as, owing to the lateness of the season, it was important to Fuller & Tiernan to be able to proceed immediately with the execution of their contract, they borrowed from the Quartermaster’s Department a quantity of corn, about one-half of the whole quantity they were to deliver at Fort Union, which they afterward returned in kind to that Department; the other half they made up otherwise. They fulfilled their contract and received their pay thereunder.
It is cqntended by the claimant that he was entitled to the transportation of this corn to the extent of 797,189 pounds, and that the contract with Fuller & Tiernan was only an invasion of his contract,’ which deprived him of the profits of the transportation of that quantity of stores and supplies.
We do not concede the correctness of this view of the case, for the following reasons:
1. The Commissary Department of the Army is, by law, separate and distinct from the Quartermaster’s Department, charged with separate and distinct duties and responsibilities, and nowise under the control or authority of the latter. (3 Stat. L., 426, §§ 6, 7.) It may be, in some circumstances, dependent on the Quartermaster’s Department for transportation of commissary stores, but this does not require it to abstain from making contracts for the furnishing of such stores at a given point, *381 because to furnish them, there might require the contractor to transport them, over a route upon which the Quartermaster's Department had an existing contract for transportation, under which such stores might be transported. To charge a principal, having two different agents in two different departments of the principal’s business, with damages for a violation by one agent of a contract made by the other, it must be shown that the contract alleged to have been violated was in such sense binding on the agent charged with its violation as that he was bound to abstain from the act upon which the violation rests. In this case no such obligation upon the Commissary Department was created by the claimant’s contract with the Quartermaster’s Department.
2. The claimant contracted for nothing more than the transportation of “ military stores and supplies for which the Quartermaster’s Department might require transportation by contract.” That Department might or might not be called upon by the Commissary Department to transport commissary stores. If the latter had had the 18,000 bushels of corn at Fort Leavenworth, it would doubtless have made requisition upon the Quartermaster’s Department for its transportation to Fort Union, and then the claimant’s right to carry it under his contract, to the extent of 797,189 pounds, would have accrued; but it did not, in fact, have it, and it did not make such requisition; and, therefore, the transportation of it was not a matter which the Quartermaster’s Department required; and, not being so, it was not covered by the claimant’s contract.
3. The contract with Fuller & Tiernan was not for transportation as such; it provided no pay for transportation; it called for the delivery of corn at Fort Union, which doubtless involved its transportation thither from some point or points, and the cost of its transportation was doubtless an element in the price agreed to be paid for it when delivered there; but there was no contract for its transportation; and the fact that its transportation actually wns over the route covered by the claimant’s contract was not a violation of that contract.
■1. The claimant’s contract was for the transportation of military stores and supplies — a mere bailment; while that with Fuller & Tiernan was a contract of purchase, which did not require them to transport the corn over the claimant’s route, but merely to furnish the article at a designated point, for a desig *382 nated price, leaving them to get it there by any route they might see fit to take. If, as we have seen it was, this was such a contract as the Commissary Department had authority to make, the fact that its execution caused the transportation of the corn over the claimant’s route is no breach of his contract with the Quartermaster’s Department.
5. The legal authority of the Quartermaster’s Department to contract for transportation extended only to military stores and supplies which were the property of the United States ; but the corn which Fuller & Tiernan agreed to deliver, at Fort Union was not the property of the United States while in transitu, and was nob to become so until delivered to, andinspected and accepted by, the proper officer there. Up to that time it was their own private property, and wholly at their own risk, for the transportation of which the Quartermaster’s Department had no legal authority to contract. No breach of the claimant’s contract could, therefore, spring from the contract with Fuller & Tiernan.
6. The fact that Fuller & Tiernan borrowed part of the 18,000 bushels of corn from the Quartermaster’s Department at Fort Leavenworth does not, in our opinion, establish the evasive and tricky character of the contract with them which has been attributed to it. The corn was lent, as appears by the evidence, merely to accommodate the Commissary Department, by helping it to execute a sudden and unexpected order for supplying corn at Fort Union, which there was very short time to execute before winter would set in. The act of one officer, in thus seeking to aid another in an exigency, is not to be construed, except upon clear proof, into a tricky and fraudulent attempt to injure a third party, whom the officer doing the act could hare no assignable motive for injuring. Such an inference cannot be drawn from the mere act, much less can it be when, bn the one hand, there is an entire absence of proof of fraudulent or improper motive, and, on the other, there is evidence of a fit and proper motive to subserve the interests of their common principal.
Upon these grounds we hold that the claimant’s contract was not violated by the action of the Commissary Department, or by the fact that Fuller & Tiernan transported their coni over the route covered by that contract; and the petition is therefore dismissed.
Milligan, J., dissented.